UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **T.F.R., a minor, Melissa L Rodriguez Mandry, individually and as representative of Minor T.F.R., Jose W. Rodriguez Mandry, individually and as representative of Minor T.F.R.,** | Civ. No. 2:16-5407 |
| **Plaintiffs,** | OPINION |
| v. | |
| **Morris County Prosecutor's Office et al.,** | |
| **Defendants.** | |

## WILLIAM J. MARTINI, U.S.D.J.:

Plaintiffs Melissa L. Rodriguez and Jose W. Rodriguez bring this § 1983 action individually and as representatives for Plaintiff T.F.R, a minor. The Complaint alleges twelve[1] federal and state claims against Defendants Morris County Prosecutor's Office ("MCPO"), Prosecutor Fredric Knapp, Assistant Prosecutor Samantha DeNegri, and Investigator Keisha Higgs. Defendant MCPO moves under 12(b)(1) to dismiss pursuant to Eleventh Amendment sovereign immunity, and Defendants Knapp, DeNegri and Higgs move under 12(b)(6) to dismiss on the basis of absolute and qualified immunity. For the reasons below, Defendants' motion to dismiss is **GRANTED** and Plaintiffs' claims are **DISMISSED WITH PREJUDICE** as to these Defendants.

I. BACKGROUND

   A. Investigation and Arrest of T.F.R. for Robbery

The following facts are drawn from the Plaintiffs' complaint. ECF No. 1. On November 14, 2015, a gun-wielding individual stole a $1,200 bong and $60 lighter from Serenity Smoke Shop in Roxbury Township, Morris County, New Jersey. Complaint ("Compl.") § 13. Thanh Nguyef, owner of an adjacent store, was five feet away from the

---

[1] An additional claim for negligent misrepresentation against a Defendant Nguyef is not at issue in this motion. Complaint §§ 192-96.

1

perpetrator and identified him as Plaintiff T.F.R, a nearby resident. *Id.* §§ 19-20. Surveillance video from inside the smoke shop depicted an individual "wearing a dark grey hooded sweatshirt, black bandana over the face, gloves (possibly latex), black jeans, and black shoes with white trim and off-white soles." *Id.* § 34. Based on the tape, the detective estimated the individual's height was roughly 5'8" or 5'9," although the shop's cashier estimated between 5'11" and 6'2." *Id.* § 37.

On November 17, 2015, Assistant Prosecutor DeNegri advised Roxbury police that evidence was sufficient to apply for a search warrant for T.F.R.'s home, which was obtained and executed the following day. *Id.* § 43. The search turned up several air pistols, black shoes with white trim/soles, a grey hooded sweatshirt, latex gloves in off-white/yellow, and T.F.R.'s cell phone. *Id.* § 46. The same day, Detective Niemynski observed T.F.R at his school wearing black jeans and "white sneakers with off-white soles and white trim." *Id.* § 47.

Plaintiff surrendered to the Roxbury police on November 20, 2015, and was charged on the same day with robbery and three related offenses. *Id.* § 49. He was detained at a juvenile correctional facility for several weeks. Following a December 14, 2015 probable cause hearing, T.F.R. was placed on house arrest. §§ 51-54.[2] His charges were ultimately dropped on May 12, 2016. *Id.* § 62.

### B. The Instant Action

Count I of the Complaint alleges unlawful seizure and "prolonged detention" in violation of the Fourth Amendment. Counts II and III allege due process violations for disregarding exculpatory evidence, failing to investigate alternative suspects and depriving T.F.R. of his liberty through imposition of house arrest. Count VII alleges conspiracy to deprive T.F.R. of his constitutional rights. The remaining nine claims arise under state law.

According to the Complaint, police and prosecutors ignored exculpatory evidence produced by T.F.R.'s family after T.F.R. was charged. Several family members provided alibis for Plaintiff around the time of the robbery. *Id.* §§ 70, 72-73. Plaintiff's mother, Melissa L. Rodriguez, alerted police of an alternative suspect, Darrien Johnson. Mrs. Rodriguez asserted that Johnson admitted to an unspecified third party that he had committed the robbery, while Johnson's "Facebook profile indicated he used marijuana." *Id.* §65.

---

[2] On March 1, 2016, Judge Huebner ordered that T.F.R. be permitted to return to school. Compl. § 59.

Defendants MCPO, Detective Keisha Higgs, Assistant Prosecutor Samantha DeNegri and Prosecutor Fredric Knapp now move pursuant to 12(b)(1) and 12(b)(6) to dismiss all claims against them.[3]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

## III. DISCUSSION

Plaintiffs' opposition papers concede that MCPO, as an arm of the state, is immune from suit under the Eleventh Amendment. *See Regents of Univ. of California v. Doe*, 519 U.S. 425, 429 (1997); *Fitchik v. N.J. Transit Rail Operations*, 873 F.2d 655, 659 (3d Cir. 1989). All federal and state claims against MCPO must therefore dismissed. The Eleventh Amendment does not, however, prohibit personal liability of individual state officials sued under § 1983 for alleged constitutional violations. *Hafer v. Melo*, 502 U.S. 21, 31 (1991) ("[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of § 1983 . . . nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."). Instead, the individual Defendants assert absolute and qualified immunity defenses.

### A. Absolute Immunity

Absolute immunity protects state prosecutors from suit for actions taken during the course of "initiating and conducting prosecutions." *Burns v. Reed*, 500 U.S. 478, 485 (1991) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976)). Only those acts "intimately associated with judicial phase of the criminal process" are immune from civil suit. *Imbler*, 424 U.S. at 430. Examples include "professional evaluation of the evidence assembled by the police" when determining to pursue charges, *see Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); a prosecutor's appearance at a probable cause hearing, *Burns*, 500 U.S. at 487-88; the presentation of evidence in support of a search warrant, *id.* at 489; and a "prosecutor's management of a trial-related information system," *Van de Kamp v. Goldstein*, 555 U.S. 335, 349 (2009). Even abhorrent behavior,

---

[3] The other Defendants—Roxbury Township, Detective Jack Niemynski, and Thahn Nguyef (witness to the robbery)—do not join in the motion. On December 12, 2016, while this motion was pending, Magistrate Judge Mark Falk issued a scheduling order opening discovery to all parties until August 31, 2017. ECF No. 27.

such as "knowing use of false testimony" before a grand jury or a trial, is immune from civil suit. *See Burns*, 500 U.S. at 485.

Of course, the scope of absolute immunity is not absolute. It does not apply to "investigative functions normally performed by a detective or police officer," like "searching for the clues and corroboration that might give [rise to] probable cause," even where such conduct is undertaken by a prosecutor. *Buckley*, 509 U.S. at 273-74. Nor does absolute immunity apply to a prosecutor's advice to police regarding the existence of probable cause in support of a search warrant. *Burns*, 500 U.S. at 492-93 (characterizing such advice as occurring at an "investigative" rather than "judicial phase" of a criminal case).

Here, Assistant Prosecutor DeNegri's decision to prosecute T.F.R. and not to prosecute an alternative suspect are protected by absolute immunity. In contrast, *Burns* makes clear that DeNegri's role in advising police to pursue a search warrant does not enjoy absolute immunity. Compl. § 43. As discussed below, however, those actions are nonetheless shielded by qualified immunity.

As for Defendant Knapp, the assertion that he "supervised and controlled the investigation" of T.F.R. does not adequately allege that Knapp, as Prosecutor, engaged in any non-prosecutorial conduct in relation to T.F.R.'s case. In other words, Defendant Knapp is absolutely immune from liability for prosecutorial decisions, and there is no indication that he personally participated in the investigation of T.F.R. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."). He is therefore immune from suit in this action.

### B.  Qualified Immunity

While absolute immunity does not apply to Assistant Prosecutor DeNegri's role in pursuing a search warrant or Officer Higgs' investigation of T.F.R., such conduct is shielded by qualified immunity.

The doctrine of qualified immunity shields government officials who perform discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "Under the two-step sequence for resolving claims of qualified immunity, [Courts] must determine whether the alleged or proven conduct of the defendant violated the plaintiff's constitutional rights." *Carroll v. Clifford Twp.*, 625 F. App'x 43, 47 (3d Cir. 2015) (citing *Pearson v. Callahan,* 555 U.S. 223, 232 (2009)).  Second, Courts ask whether the right was "clearly established at the time of [the] defendant's misconduct." *Id.* (internal quotation marks and alterations omitted).  Courts have "discretion to perform [this] inquiry in the order [they] deem most

4

appropriate for the particular case before [them]." *Santini v. Fuentes*, 795 F.3d 410, 418 (3d Cir. 2015) (citing *Pearson*, 555 U.S. at 236).

       i.      <u>Fourth Amendment Claim (Count I)</u>

Count I alleges that Defendant DeNegri violated T.F.R.'s Fourth Amendment rights when she advised police to apply for a search warrant for T.F.R.'s home. *See* U.S. Const. amend. IV. This advice was predicated on the Nguyef's eye-witness identification of T.M.R., which was corroborated by a surveillance video showing a perpetrator similar in height to T.F.R. "It is well established that an identification from a single, credible witness can be sufficient for probable cause." *Scott v. Farrell*, 2013 WL 6474488, at *3 (Dec. 10, 2013) (citing *Sharrar v. Felsing*, 128 F.3d 810, 818-19 (3d Cir. 1997)). Further, there is no clearly established obligation for an investigator "to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n.8 (3d Cir. 2000). Defendants DeNegri and Higgs are entitled to qualified immunity from Plaintiffs' Fourth Amendment claim, since the officials did not violate any "clearly established" Fourth Amendment rights.

      ii.     <u>Due Process Claims (Counts II and III)</u>

Counts Two and Three allege that Defendants "failed to investigate exculpatory evidence" and subjected T.F.R. to "prolonged detention and pretrial deprivation of liberty," Compl. § 105. There is no clearly established right to avoid pretrial detention. Rather, pretrial detention is a routine aspect of our criminal justice system. *See, e.g., United v. Salerno*, 481 U.S. 739, 738-39 (1987); *United States v. El-Hage*, 213 F.3d 74, 79 (2d. Cir. 2000) (pretrial detention of 30-33 months did not violate due process). Moreover, case law does not clearly establish that investigators must pursue allegedly exculpatory evidence regarding different suspects. *See Baker v. McCollan*, 443 U.S. 137, 145–46 (1979) ("[W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent."). The Complaint does not plausibly allege that Defendants DeNegri or Higgs violated any "clearly established" procedural or substantive due process rights.

      iii.    <u>Conspiracy to Violate 42 U.S.C. § 1983</u>

Count Seven alleges that Defendants conspired to violate rights protected by Section § 1983. As discussed above, however, no violation of a "clearly established" right occurred. Count Seven is dismissed.

5

### C. State Claims

Because the Court now dismisses all federal claims, it declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against Defendants DeNegri, Knapp and Higgs.

## IV. <u>CONCLUSION</u>

Defendants' motion to dismiss is **GRANTED**. All claims against Defendants Morris County Prosecutor's Office, Fredric Knapp, Samantha DeNegri, and Keisha Higgs are **DISMISSED WITH PREJUDICE**.

                                                         /s/ William J. Martini
                                        **WILLIAM J. MARTINI, U.S.D.J.**

**January 23, 2017**