UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|                                                                                                                                                                                                                                 |                       |
|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-----------------------|
| **T.F.R., a minor, Melissa L Rodriguez Mandry, individually and as representative of Minor T.F.R., Jose W. Rodriguez Mandry, individually and as representative of Minor T.F.R.,**<br><br>Plaintiffs,<br><br>v.<br><br>**Morris County Prosecutor's Office et al.,**<br><br>Defendants. | Civ. No. 2:16-5407<br><br>OPINION |

### **WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs Melissa L. Rodriguez and Jose W. Rodriguez bring this § 1983 action individually and as representatives for Plaintiff T.F.R, a minor. The amended complaint alleges fifteen federal and state claims against Defendants Morris County Prosecutor's Office ("MCPO"), Prosecutor Fredric Knapp, Assistant Prosecutor Samantha DeNegri, Investigator Keisha Higgs (the "MCPO Defendants"), Detective Jack Niemynski, the Township of Roxbury, and Thanh Nguyef. The Township of Roxbury and Detective Niemynski move under 12(b)(6) to dismiss the amended complaint for failure to state a claim upon which relief may be granted. For the reasons below, the motion to dismiss is **GRANTED**. Further, claims against the MCPO Defendants are barred by the Court's previous Order dismissing claims against them with prejudice.

I. **BACKGROUND**

The following facts are drawn from the Plaintiffs' amended complaint. ECF No. 40. On November 14, 2015, an individual wielding a handgun entered the Serenity Smoke Shop in Roxbury Township, Morris County, New Jersey, and left with a $1,200 bong and $60 lighter. Compl. ¶ 13. Surveillance video from inside the smoke shop depicted an individual "wearing a dark grey hooded sweatshirt, black bandana over the face, gloves (possibly latex), black jeans, and black shoes with white trim and off-white soles." *Id.* at ¶ 34. Based on the tape, the detective estimated the individual's height was roughly 5'8" or

5'9," although the shop's cashier estimated between 5'11" and 6'2." *Id.* at ¶ 37. Thanh Nguyef, the owner of an adjacent store, saw the perpetrator leave the shop and identified him as Plaintiff T.F.R, a local minor whom Nguyef "was known to dislike." *Id.* at ¶¶ 19-22.

On November 17, 2015, the MCPO advised Detective Niemynski that evidence was sufficient to apply for a search warrant for T.F.R.'s home. A warrant was issued by Judge Michael E. Huebner, J.S.C., and executed on November 19, 2015. *Id.* at ¶¶ 43-45. The search turned up several air pistols, black shoes with white trim/soles, a grey hooded sweatshirt, latex gloves in off-white/yellow, and T.F.R.'s cell phone. *Id.* at ¶ 46. The same day, Detective Niemynski observed T.F.R at his school wearing black jeans and "white sneakers with off-white soles and white trim." *Id.* at ¶ 47.

Plaintiff surrendered at the advice of Roxbury police on November 20, 2015, and was charged on the same day with robbery and three related offenses. *Id.* at ¶¶ 48-49. He was detained at the Morris County Juvenile Detention Center for several weeks. ¶ 51. In the meantime, several relatives provided alibis for T.F.R. on the day of the crime and told police that another individual had confessed to other third parties to stealing the bong. *Id.* at ¶¶ 63-66. Detective Niemynski was unable to corroborate these claims. *Id.* at ¶ 68. Following a December 14, 2015, probable cause hearing, T.F.R. was placed on house arrest. *Id.* at ¶¶ 51-54. An Order dated March 1, 2016, permitted T.F.R. to return to school. On May 12, 2016, the charges against T.F.R. were dropped. *Id.* at ¶ 62.

**The Instant Action**

The original complaint was filed on September 6, 2016, primarily alleging unlawful seizure and prolonged detention against MCPO, the Township of Roxbury, Frederic Knapp, Samantha Denegri, Keisha Higgs and Jack Niemynski. On January 24, 2017, the Court dismissed with prejudice all claims against MCPO, Knapp, DeNegri, and Higgs, on the basis of absolute and qualified immunity. *See* ECF No. 31. Plaintiffs amended their complaint on May 4, 2016. ECF No. 40. The fifteen-count amended complaint asserts procedural and substantive due process claims pursuant to 42 U.S.C. § 1983 and the New Jersey Constitution (Counts Two, Three, Five, and Six), unlawful seizure and prolonged detention in violation of the Fourth Amendment and the New Jersey Constitution (Counts One and Four), conspiracy under § 1983 and N.J.S.A. 10:6-2 (Counts Seven and Eight), malicious prosecution (Count Twelve), a violation of the Equal Protection Clause of Fourteenth Amendment (Count Fourteen), and a *Monell* claim against the Township of Roxbury under § 1983 and N.J.S.A. 10:6-2 (Count Fifteen). The other Counts—Nine, Ten, Eleven, and Thirteen—are not relevant to this motion. The Township and Detective Niemynski have moved to dismiss the amended complaint.[1] Discovery has been stayed pending the disposition of this motion.

---

[1] The Township of Roxbury is represented by separate counsel for Count Eleven, a violation the New Jersey Open Records Act. *See* Def. Mem. Supp. Mot. Summ. J. at n. 2, p. 1.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)). At the same time, courts "are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 Fed. Appx. 147, 149 (3d Cir. 2016)(citations omitted). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged . . . Where a complaint pleads facts that are merely consistent with a Defendant's liability, it stops short of the line between the possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009).

## III. DISCUSSION

Detective Niemynski moves to dismiss the amended complaint on the basis of qualified immunity as well as Plaintiffs' failure to state a claim upon which relief may be granted. The Township of Roxbury moves to dismiss based on Plaintiffs' failure to provide facts showing that a specific "policy or custom" caused Plaintiffs' alleged injuries. Defendants also argue that T.F.R.'s parents lack standing because they have not sustained injuries personal to them.

### A. Qualified Immunity

Qualified immunity shields government officials who perform discretionary functions from liability for civil damages, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009)(courts may choose to first ask whether a violation occurred or instead proceed directly to the question of whether the right in question was "clearly established"). As explained below, Plaintiffs fail to plead specific facts plausibly showing that a violation of T.F.R.'s Fourth Amendment or due process rights occurred. Detective Niemynski is accordingly shielded from liability by qualified immunity. *See Roth v. City of Hermitage*, 2017 WL 3971397, at *3 (3d Cir. Sept. 8, 2017) ("Failing to consider the qualified immunity defense before dismissing without prejudice on the merits was error because the District Court failed to resolve a 'motion asserting qualified immunity . . . at the earliest possible stage in the litigation.'").

### B. Fourth Amendment Claims

Counts One and Four allege that Plaintiff was arrested and detained without probable cause, in violation of T.F.R.'s right to be free from unreasonable seizure under the Fourth Amendment and the New Jersey Constitution.[2] The constitutional torts of false arrest and malicious prosecution both require a showing that officials lacked probable cause when T.F.R. was detained for prosecution. *Wheeler*, 639 Fed. Appx. at 149; *Johnson v. Knorr*, 477 F.3d 75, 86 (3d Cir. 2007)(citing Hartman v. Moore, 547 U.S. 250, 256-57 (2006)). Probable cause exists "when the information within the arresting officer's knowledge at the time of the arrest is sufficient to warrant a reasonable law enforcement officer to believe that an offense has been or is being committed by the person to be arrested." *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000).

The facts set out in the amended complaint do not permit a reasonable jury to find that Niemynski detained T.F.R. without probable cause. A witness who knew personally T.F.R. told police that he saw T.F.R. exit the smoke shop with a large yellow bong at the time of the burglary. *See Scott v.* Farrell, 2013 WL 6474488, *3 (D.N.J. Dec. 10, 2013) (citing *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n. 8 (3d Cir. 2000)) (holding that a police officer armed with eye-witness testimony need not conduct further investigation in order to establish probable cause). Evidence subsequently recovered from T.F.R.'s home pursuant to a lawfully obtained search warrant—air pistols, a grey hooded sweatshirt and latex gloves in an off-white/yellow color—matched the appearance of the perpetrator on store surveillance video. While not every article of clothing or item was located in the Plaintiffs' home, the evidence recovered there was nonetheless probative of T.F.R.'s guilt. Later that day, Niemynski observed Plaintiff at school wearing black jeans and white sneakers with off-white soles and white trim, similar to those worn by the perpetrator. At that point, a prosecutor advised Niemynski that he had probable cause to make an arrest, and Plaintiff was charged with the burglary on November 20, 2015. Ex. B., Niemynski Dep. 153: 16-25. At a probable cause hearing on December 14, 2015, a judge determined that the evidence was sufficient to detain T.F.R. until his trial. *See Gerstein v. Pugh*, 420 U.S. 103 (1995) (holding that the Fourth Amendment "requires a judicial determination of probable cause as a prerequisite to restraint of liability following arrest.").

In short, even construing the facts in Plaintiffs' favor, Niemynski's probable cause determination was reasonable. That T.F.R. was later exonerated does not alter the Court's analysis. The Constitution does not demand infallibility of law enforcement officers. *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005). The motion to dismiss is **GRANTED** as to Counts One, Four, and Twelve.

### C. Due Process Claims

---

[2] Count 12 alleges common law malicious prosecution. The same analysis applies. *See New Jersey Division of Child Protection and Permanency v. V.E.*, 153 A.3d 941, 955 (N. J. Sup. Ct. App. Div. 2017)

Counts Two, Three, Five and Six allege that allege that Defendants violated T.F.R.'s procedural and substantive due process right to be free from "prolonged detention and pretrial deprivation of liberty," guaranteed by the Fourteenth Amendment and the New Jersey Constitution. Compl. ¶ 117. In connection with these claims, Plaintiffs also allege that T.F.R.'s pretrial detention continued "despite extensive exculpatory evidence." *Id.* at ¶ 113.

Setting aside bare legal conclusions, there are no discernable due process violations described in the amended pleadings. With respect to procedural due process, the Court notes that the Fourth Amendment rather than the Fourteenth is the "relevan[t] constitutional provision to assess the deprivations of liberty that go hand in hand with criminal prosecutions." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 913 (2017)(citing *Albright v. Oliver*, 510 U.S. 266, 274 (1994)). *See New Jersey Division of Child Protection and Permanency v. V.E.*, 153 A.3d 941, 955 (N. J. Sup. Ct. App. Div. 2017) (applying the same analysis to state and federal due process claims). As discussed above, Plaintiffs' procedural claims fail because they lack minimal factual support. Characterizing them as procedural due process claims changes nothing.

Nor does the complaint plausibly state a claim for a substantive due process violation. *See Wheeler v. Wheeler*, 639 F. App'x. 147, 151 (3d Cir. 2016) ("[R]edress for alleged false arrest or malicious prosecution 'cannot be based on substantive due process considerations, but instead must be based on a provision of the Bill of Rights" such as the Fourth Amendment.'"). Subjecting an individual—even a minor—to pretrial detention does not offend due process, even when a more complete assessment of the evidence later establishes that person's innocence. *See T.F.R., et al. v. Morris County Prosecutor's Office, et al.*, 2017 W.L. 349377, at *3 (citing *United States v. Salerno*, 481 U.S. 739, 748 (1987)). *See also Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (holding that law enforcement officers who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity). The motion to dismiss is **GRANTED** as to Counts Two, Three, Five, and Six. The motion is also **GRANTED** as to the claims for conspiracy under Counts Seven and Eight, which fail to identify any agreement to deprive T.F.R. of a constitutionally protected right.

### D. Standing of Plaintiffs Melissa L. Rodriguez and Jose W. Rodriguez

T.F.R.'s parents, Plaintiffs Melissa L. Rodriguez Mandy and Jose L. Rodriguez, allege that they have personally suffered economic and emotional damages as a result of their child's alleged unconstitutional arrest and prosecution. Plaintiffs claim that Ms. Rodriguez had no choice but to quit her job in order to supervise T.F.R's home confinement, and that Plaintiffs were forced "to spend family holidays such as Christmas and New Year's Day as prisoners in their own home." *See* Am. Compl. ¶ 55-56. The amended complaint does not otherwise specify how Melissa and Jose Rodriguez were directly injured by their son's arrest and prosecution.

To have Article III standing, a plaintiff must show (1) a personal injury that is (2) fairly traceable to a defendant's alleged conduct, and (3) the injury is likely to be addressed by a favorable decision of the court. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982). In general, "[i]njuries to a parent resulting from violations of their child's constitutional rights are not sufficiently personal for purposes of the parent's individual standing." *Delbridge v. Whitaker*, Civ. No. 2:09-4227 (SDW)(MCA), 2010 WL 1904456, at *3 (D.N.J. May 10, 2010) (citing *Hannah v. City of* Dover, 152 Fed. Appx. 114, 116-17 (3d Cir. 2005)). *See Reihner v. Washington, Pennsylvania*, 672 Fed. Appx. 142, 144 (3d Cir. 2016) (citing *Powers v. Ohio*, 499 U.S. 400, 410 (1991)) ("Where the Reihners rested any claim to relief on the rights or interests of their son, the District Court lacked jurisdiction to entertain the matter."). Accordingly, the § 1983 claims by Plaintiffs Jose W. Rodriguez and Melissa L. Rodriguez Mandry fail as a matter of law.

### E. Equal Protection

Plaintiffs allege that Detective Niemynski "settled on Plaintiff as a suspect because he was Hispanic and deliberately ignored a Caucasian suspect, and then built the case to corroborate his initial race-based conclusion." Am. Comp. ¶ 202. Plaintiff, however, does not provide any evidence that Niemynski was motivated by discriminatory animus. *See Ftizgerald v. Martin*, Civ. No. 16-3377, 2017 WL 3310676, *14 (E.D. Pa. Aug. 3, 2016). As Defendants argue, information regarding the alternative suspect was not provided to Niemynski until after the initial investigation and arrest of T.F.R., which was supported at the time by probable cause. Without evidence that T.F.R. was treated differently on account of his membership in a protected class, Plaintiffs fail to state a claim under the Equal Protection Clause. The motion to dismiss is **GRANTED** as to Count Fourteen.

### F. Claim against Township of Roxbury

A municipality may be liable for an employee's conduct under § 1983 if the plaintiff identifies a "policy or custom" that caused his injury, and an official has acted with "deliberate indifference" as to the consequences of his conduct. *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 694 (1978). "[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "When city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.*

The factual content of the amended complaint is too bare to support a *Monell* claim. T.F.R. alleges that his unlawful detainment "was the result of official policy or custom of [Roxbury] in failing to train its police officers and detectives in proper investigatory procedures, the proper identification of suspects, proper forensic video identification procedures, and abdicating their investigatory function to the Morris County Prosecutor's

Office." FAC ¶ 213. This language does not name a specific policymaker or policy statement that caused a failure in training. *See McTernan v. City of York¸* 564 F.3d 636, 658 (3d Cir. 2009). Nor do Plaintiffs describe "an act that has not been formally approved by an appropriate decisionmaker but that is so widespread" as to become a "custom." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). *See also Lapella v. City of Atlantic City*, 2012 WL 2952411, *6-7 (D.N.J. July 18, 2012) (dismissing a complaint that failed to allege "a specific deficiency rather than a general laxness or ineffectiveness of training."). A successful claim would identify a particular practice that would render a "specific violation . . . almost bound to happen sooner or later rather than merely likely to happen in the long run." *Id.* at *7 (citing *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987)(internal citations omitted)). *See Lawson v. Pennsylvania SPCA*, 124 F. Supp.3d 394, 407 (E.D. Pa. 2015). Even granting that Detective Niemynski did not employ the best conceivable method for forensic video identification, this is decidedly not a case of "an unusually serious instance of misconduct that, on its face, raises doubts about a municipality's training policies." *Atchinson v. District of* Columbia, 73 F.3d 418, 422-23 (D.C. Cir. 1996). Rather, the amended complaint is at bottom directed at the overall competency of Detective Niemynski and the Roxbury police. Because *Monell* claims must relate to a specific "policy or custom," the motion to dismiss is **GRANTED** as to Count Fifteen.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismissed filed by Detective Niemynski and the Township of Roxbury is **GRANTED**. Pursuant to the accompanying order, the amended complaint is **DISMISSED WITH PREJUDICE** as to Counts One through Eight, Count Twelve, Count Fourteen, and Count Fifteen.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**October 3, 2017**